IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANKLIN UNIVERSITY, | : | CIVIL ACTION |
| | : | NO. 21-1304 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CGFNS INTERNATIONAL, INC., | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    April 14, 2021

## I.    INTRODUCTION

Franklin University ("Franklin") filed a motion for a preliminary injunction seeking to (1) stop the Commission on Graduates of Foreign Nursing Schools ("CGFNS") from implementing an English-language proficiency ("ELP") requirement for certain foreign nurses seeking to work in the United States, and (2) compel CGFNS to issue certified statements to graduates of Franklin's RN-BSN program who meet all of the relevant statutory criteria.[1]

---

[1]    Although CGFNS does not challenge Franklin's third-party standing, it is important to note that third-party standing is appropriate where the third party's interests are also adversely affected. See Craig v. Boren, 429 U.S. 190, 196-97 (1976). Franklin argues that its interests will be adversely affected if CGFNS's policy change goes into effect because Franklin's RN-BSN program would suffer a precipitous drop in enrollment, which would ultimately force Franklin to suspend or terminate the RN-BSN program. Under these circumstances, Franklin has standing to pursue this action.

With the consent of the parties, the Court held a consolidated hearing under Federal Rule of Civil Procedure 65(a)(2) on Franklin's request for injunctive and declaratory relief. This is a matter of statutory interpretation of which the material facts are not in dispute,[2] and therefore no evidentiary hearing was required. Issues of damages and other relief, if any, were bifurcated to a later date. Additionally, Franklin agreed at the hearing to narrow the issues and allow the Court to focus on the first issue only, i.e., whether CGFNS has the authority to implement the policy change at issue.[3] See Oral Arg. Tr. 7:10-8:10, ECF No. 19.

For the reasons explained below, the Court finds that CGFNS does not have the authority to implement a policy change requiring foreign nurses who completed their entry-level nursing program in a country not included in the relevant regulation (i.e., 8 C.F.R. § 212.15(h)(2)(iv) (2020)) to meet an ELP requirement before they can receive their certified statement. Therefore, the Court will grant the injunctive and declaratory relief sought by Franklin.

---

[2]    The parties dispute certain facts, such as the extent to which there have been complaints about the adequacy of Franklin's RN-BSN program, but those disputes are not relevant to the pure legal issue before the Court.
[3]    Given that CGFNS has pledged to implement its policy change on May 1, 2021, this issue is ripe for disposition. However, it is not known whether CGFNS will approve or reject Franklin's RN-BSN program for some other reason not inconsistent with the relevant statute and/or deny certified statements to Franklin's students. Therefore, the second issue, i.e., whether CGFNS should be compelled to issue certified statements to graduates of Franklin's RN-BSN program, is not yet ripe for disposition.

## II.  FACTUAL BACKGROUND

Franklin is a nonprofit institution of higher learning, organized under the laws of Ohio. Franklin offers an online RN-BSN program ("Graduate Program") consisting of nine online courses, each offered over a six-week period. Tuition for the Graduate Program is $15,000. Franklin teaches the courses in English, but all of the students in the Graduate Program are located overseas, and most, if not all, completed their entry-level nursing program in a foreign country.

CGFNS is a private nonprofit organization that reviews applications from overseas nurses, determines whether they meet immigration requirements, and grants certificates or certified statements to qualifying applicants in order to facilitate their entry into, and practice in, the United States. CGFNS has granted certified statements to 167 graduates of Franklin's Graduate Program so far. However, without any change in the federal law, CGFNS announced that starting May 1, 2021, it will require foreign nurses who completed their entry-level nursing program in a country not included in the relevant regulation (i.e., 8 C.F.R. § 212.15(h)(2)(iv) (2020)) to meet an ELP requirement before they can receive their certified statement, regardless of whether the foreign nurse attends a graduate-level program in one of the relevant countries. CGFNS made this

announcement after conducting a self-mandated sixty-day public comment period.

## III. DISCUSSION

The parties spent significant energy in their initial briefs arguing and responding to the issue of whether CGFNS has the authority to impose a new ELP requirement under the relevant statute. However, CGFNS now argues that its policy change is not a new requirement, but simply a different way of interpreting the existing nursing program requirement under the statute.[4] Consequently, the Court will not address whether CGFNS has the authority to impose new requirements under the statute.

Additionally, since Franklin has agreed to narrow the issue at hand to whether CGFNS has the authority to implement its policy change, rather than whether CGFNS should be compelled to issue certified statements to Franklin's students, the Court will not consider whether CGFNS has the authority to approve or reject Franklin's Graduate Program specifically under the statute.[5] Thus, the Court will confine its discussion to the

---

[4]    CGFNS seeks to interpret the phrase "nursing program" to mean entry-level nursing programs, rather than graduate-level nursing programs, because many graduate-level nursing programs do not have clinical components in English, which CGFNS believes is a crucial component of a "nursing program."

[5]    As alluded to in their initial briefs, this analysis would have included questions such as (1) whether CGFNS has the authority to reject Franklin's Graduate Program because the Graduate Program does not contain a clinical nursing component in English, and (2) whether Franklin's Graduate Program is technically located in the United States.

issue of whether CGFNS may interpret the existing statute in a way that allows it to implement the policy change at issue.

**A. Background of the Legal Scheme**

The Immigration and Nationality Act is the statutory scheme at issue in this case. As relevant here, § 1182 of the Act provides two separate ways for foreign nurses to gain admission to work in the United States. See 8 U.S.C. § 1182(a), (r). Broadly speaking, the notable difference is that a foreign nurse seeking admission under subsection (a) must demonstrate English proficiency by a standardized test score, while foreign nurses seeking admission under subsection (r) do not have to do so if they graduate from certain programs located in certain countries where the language of instruction is English. At issue in this case is the meaning of the phrase "nursing program" in § 1182(r)(3) and CGFNS's interpretation of that phrase. The language of § 1182(r) reads as follows:

> Exception for certain alien nurses.[6] Subsection (a)(5)(C) shall not apply to an alien who seeks to enter the United States for the purpose of performing labor as a nurse who presents to the consular officer (or in the case of an adjustment of status, the Attorney General) a certified statement from the Commission on Graduates of Foreign Nursing Schools (or an equivalent independent credentialing organization approved for the certification of nurses under subsection (a)(5)(C) by the Attorney General in consultation with the Secretary of Health and Human

---

[6]    The statute and regulation at issue use the phrase "alien nurses," while the parties in this case use the phrase "foreign nurses." The Court will use the phrase "foreign nurses" throughout this memorandum for the sake of clarity.

Services) that—
  (1) the alien has a valid and unrestricted license as a nurse in a State where the alien intends to be employed and such State verifies that the foreign licenses of alien nurses are authentic and unencumbered;
  (2) the alien has passed the National Council Licensure Examination (NCLEX);
  (3) the alien is a graduate of a nursing program—
   (A) in which the language of instruction was English;
   (B) located in a country—
    (i) designated by such commission not later than 30 days after November 12, 1999, based on such commission's assessment that the quality of nursing education in that country, and the English language proficiency of those who complete such programs in that country, justify the country's designation; or
    (ii) designated on the basis of such an assessment by unanimous agreement of such commission and any equivalent credentialing organizations which have been approved under subsection (a)(5)(C) for the certification of nurses under this subsection; and
   (C)
    (i) which was in operation on or before November 12, 1999; or
    (ii) has been approved by unanimous agreement of such commission and any equivalent credentialing organizations which have been approved under subsection (a)(5)(C) for the certification of nurses under this subsection.

Id. § 1182(r) (emphasis added).

The U.S. Department of Homeland Security ("DHS"), in consultation with the U.S. Department of Health and Human Services, is in charge of issuing regulations implementing this

statute. The relevant regulation to this case is 8 C.F.R. §

212.15(h) (2020), which provides as follows:

> (1) CGFNS is authorized to issue certified statements
> under section 212(r) of the Act for aliens seeking to
> enter the United States to perform labor as nurses.
> The DHS will notify the public of new organizations
> that are approved to issue certified statements
> through notices published in the Federal Register.
> (2) An approved credentialing organization may issue a
> certified statement to an alien if each of
> the following requirements is satisfied:
> > (i) The alien has a valid and unrestricted
> > license as a nurse in a state where the alien
> > intends to be employed and such state verifies
> > that the foreign licenses of alien nurses are
> > authentic and unencumbered;
> > (ii) The alien has passed the National Council
> > Licensure Examination for registered nurses
> > (NCLEX-RN);
> > (iii) The alien is a graduate of a nursing
> > program in which the language of instruction was
> > English;
> > (iv) The nursing program was located in
> > Australia, Canada (except Quebec), Ireland,
> > New Zealand, South Africa, the United Kingdom, or
> > the United States; or in any other
> > country designated by unanimous agreement of
> > CGFNS and any equivalent credentialing
> > organizations which have been approved for the
> > certification of nurses and which are
> > listed at paragraph (e) of this section; and
> > (v) The nursing program was in operation on or
> > before November 12, 1999, or has been
> > approved by unanimous agreement of CGFNS and any
> > equivalent credentialing
> > organizations that have been approved for the
> > certification of nurses.
> (3) An individual who obtains a certified statement
> need not comply with the certificate requirements of
> paragraph (f) or the English language requirements of
> paragraph (g) of this section.
> (4) A certified statement issued to a nurse under
> section 212(r) of the Act must contain the
> following information:

> (i) The name, address, and telephone number of
> the credentialing organization, and a point of
> contact to verify the validity of the certified
> statement;
> (ii) The date the certified statement was issued;
> and
> (iii) The alien's name, and date and place of
> birth.

8 C.F.R. § 212.15(h) (emphasis added)

**B. Interpreting "Nursing Program" Under § 1182(r)(3)**

8 U.S.C. § 1182(r)(3) states that foreign nurses must be a "graduate of a nursing program." There are two types of nursing programs: entry-level nursing programs and graduate-level nursing programs. CGFNS argues that they have the authority to interpret "nursing program" to mean entry-level nursing programs, rather than graduate-level nursing programs. But nowhere in the relevant statute or regulation is CGFNS granted such authority, and such an interpretation would be contrary to principles of statutory interpretation.

To be clear, the statute does explicitly provide CGFNS with certain discretionary authority. For example, § 1182(r)(3)(B)(i) grants CGFNS the discretion to determine which countries the relevant nursing programs must be located in, based on its assessment "that the quality of nursing education in that country, and the English language proficiency of those who complete such programs in that country, justify the country's designation." The statute also grants CGFNS authority to approve

specific nursing programs if they were not in existence on or before November 12, 1999. Id. § 1182(r)(3)(C). But neither the statute nor the regulation explicitly gives CGFNS the authority to define terms in the statute, and even if such authority were implicit, CGFNS may not define such terms in a manner that would be inconsistent with the rest of the statute.

The question then becomes whether CGFNS's interpretation is a permissible reading of the statute. First, it is important to note that the phrase "nursing program" is ambiguous. The statute does not define it, so it is not initially clear whether Congress intended to distinguish between an entry-level nursing program or a graduate-level nursing program. However, upon closer look, such a distinction appears to have been intentionally left out by Congress.

The statute uses the phrase "graduate medical education or training" numerous times. See id. § 1182(e), (j). Additionally, the relevant regulation provides a streamlined certification process for foreign nurses who have "graduated from an entry level program" accredited by certain institutions. 8 C.F.R. § 212.15(i)(1) (2020) (emphasis added). Thus, it is apparent that Congress and DHS knew how to differentiate between graduate-level and entry-level programs, and specifically chose not to when writing the phrase "nursing program" into the relevant statute and regulation.

The relevant canon of statutory interpretation supporting this analysis is noscitur a sociis, i.e., "the well-worn Latin phrase that tells us that statutory words are often known by the company they keep." Lagos v. United States, 138 S. Ct. 1684, 1688-89 (2018). The Supreme Court has warned multiple times that it is incorrect to apply this canon "only to the immediately surrounding words, to the exclusion of the rest of the statute." See, e.g., Schindler Elevator Corp. v. United States ex rel. Kirk, 563 U.S. 401, 409 (2011). Thus, when a word is ambiguous, its meaning may be ascertained by referring to the rest of the statute. Given that Congress chose not to confine "nursing program" to either a graduate-level or entry-level program by specifying as such, it is thus apparent that Congress intended for foreign nurses from either an entry-level or graduate-level nursing program to be able to receive a certified statement, so long as the other requirements of the statute are met.

Under these circumstances, CGFNS is not permitted to confine the phrase "nursing program" to entry-level nursing programs to the exclusion of graduate-level nursing programs. Thus, it may not implement its policy change interpreting the statute in this manner.

## IV.  CONCLUSION

As a result of the foregoing, CGFNS does not have the authority to implement a policy change requiring foreign nurses

who completed their entry-level nursing program in a country not included in the relevant regulation (i.e., 8 C.F.R. § 212.15(h)(2)(iv) (2020)) to meet an ELP requirement before they can receive their certified statement. Thus, Franklin's request for a permanent injunction and declaratory relief in relation to this issue will be granted. An appropriate order follows.